T.C. Memo. 2003-219


UNITED STATES TAX COURT


DAVID D. LE, a.k.a. DAVID DUNG LE, a.k.a. DUNG V. LE &
KIM HUONG LE, a.k.a. KIM LE, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 13703-99, 10851-01,      Filed July 22, 2003.
            10852-01.


        P-H is a physician in California who during 1990
and 1991 performed his medical services through a
business known as David Dung Le, M.D., Inc. (DDL).  R
determined for those years that (1) DDL was a
corporation that realized unreported income from third
party payments made to it but diverted to the use of
P-H and P-W (collectively, Ps) and (2) Ps received
unreported constructive distributions on account of the
diversions.  R determined as to the payments that Ps
owed 1990 and 1991 Federal individual income taxes and

---

        [1] Cases of the following petitioners are consolidated
herewith:  David D. Le, a.k.a. David Dung Le, a.k.a. David Le,
a.k.a. Dung V. Le, a.k.a. Dung Le, Transferee, docket No.
10851-01; Kim Huong Le, a.k.a. Kim H. Le, a.k.a. Kim Le, a.k.a.
Nguy Le, Transferee, docket No. 10852-01.

fraud penalties under sec. 6663(a), I.R.C. R also determined as to the payments that Ps were transferees of DDL's assets, and, in that capacity, owed the unpaid 1990 and 1991 Federal corporate income taxes and fraud penalties of DDL. Ps argue that R's determinations are erroneous because, Ps state, P-H's medical practice was not incorporated during 1990 and 1991. Ps note that a corporation has never been formally registered with California to do business as DDL.

1. Held: In 1990 and 1991, P-H operated his medical practice in California as a corporation known as DDL.

2. Held, further, Ps' 1990 and 1991 gross income includes the amounts diverted from DDL, and Ps are liable for the individual income taxes and related fraud penalties determined by R.

3. Held, further, Ps, as transferees of DDL's assets, are liable for DDL's 1990 and 1991 Federal corporate income tax liabilities (inclusive of the fraud penalties).

4. Held, further, the period of limitations under sec. 6501, I.R.C., has not run as to Ps' 1990 or 1991 taxable year.

Wayne Hagendorf and Richard J. Radcliffe, for petitioners.

Igor S. Drabkin and David R. Jojola, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: These cases concern (1) the 1990 and 1991 Federal individual income taxes of David D. Le, a.k.a. David Dung Le, a.k.a. David Le, a.k.a. Dung V. Le, a.k.a. Dung Le (petitioner), and Kim Huong Le, a.k.a. Kim H. Le, a.k.a. Kim Le, a.k.a. Nguy Le (Ms. Le) (collectively with petitioner, the Les,

or petitioners), and (2) the Les' liability for the unpaid 1990 and 1991 Federal corporate income taxes (inclusive of penalties) of a California corporation known as David Dung Le, M.D., Inc. (DDL). Respondent determined deficiencies in the Les' 1990 and 1991 Federal income taxes and fraud penalties under section 6663(a) and reflected those determinations in a notice of deficiency issued to the Les on July 7, 1999.[2] Respondent determined that the Les, as transferees of DDL's assets, are also liable for DDL's unpaid 1990 and 1991 Federal corporate income tax liabilities (inclusive of penalties) and reflected this determination in separate notices of determination of transferee liability issued to petitioner and Ms. Le on June 5, 2001.[3] As determined by respondent, the amounts of the Les' deficiencies and fraud penalties and the amounts of DDL's unpaid liabilities are as follows:

---

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

[3] On July 1, 1999, respondent had issued DDL a notice of deficiency as to Federal corporate income taxes and fraud penalties under sec. 6663(a). DDL, through its current counsel, Wayne Hagendorf (Mr. Hagendorf), petitioned the Court with respect thereto. Following our dismissal of that case for lack of jurisdiction, see David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268 (2000), affd. 22 Fed. Appx. 837 (9th Cir. 2001), respondent, on July 31, 2000, assessed the deficiencies and penalties listed in the notice of deficiency. These deficiencies and penalties are the corporate liabilities at issue.

Les' Deficiencies

| Years | Deficiencies | Penalties |
|-------|--------------|-----------|
| 1990 | $89,826 | $67,370 |
| 1991 | 59,246 | 44,435 |

DDL's Unpaid Liabilities

| Years | Income taxes | Penalties |
|-------|--------------|-----------|
| 1990 | $98,540 | $73,905 |
| 1991 | 65,897 | 49,423 |

We decide as to the subject years:

1.  Whether petitioner operated his medical practice through a C corporation known as DDL.  We hold he did.

2.  Whether the Les' gross income includes constructive distributions in the amounts determined by respondent.  We hold it does.

3.  Whether the Les, in their individual capacities, are liable for the fraud penalties determined by respondent under section 6663(a).  We hold they are.

4.  Whether the Les, as transferees of DDL's assets, are liable for DDL's unpaid Federal corporate income taxes (inclusive of penalties).  We hold they are.

5.  Whether the period of limitations under section 6501 has run as to the Les' personal income taxes.  We hold it has not.[4]

FINDINGS OF FACT

---

[4] On the basis of our holdings, we also sustain without further comment certain computational adjustments made by respondent and disputed by petitioners.

A.  Overview

Many facts were stipulated.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  We find the stipulated facts accordingly.  The Les are husband and wife, and they resided in Houston, Texas, when they petitioned the Court.  They have been married to each other since 1973.

Petitioner is a physician who was born in Hanoi, Vietnam, on January 13, 1943, and immigrated to the United States in 1975. He has been known in the United States by the following names: Dung Van Le, Dung V. Le, Dung Le, David Van Le, David Dung Le, David D. Le, and David Le.  Kim Le was born in Hanoi, Vietnam, on August 11, 1951, and also immigrated to the United States in 1975.  She has been known in the United States by the following names:  Kim Huong Le, Kim H. Le, Kim Le, and Nguy Le.

B.  Petitioner's Medical Practice

Petitioner became licensed to practice medicine in California in 1981.  On December 22, 1982, when he called himself Dung Van Le, petitioner incorporated his medical practice (medical practice) in California under the name Dung Van Le, A Medical Corporation.  The articles of incorporation for the corporation stated in relevant part:

I

The name of this Corporation is DUNG VAN LE, A MEDICAL CORPORATION.

II

The purpose of this corporation is to engage in the profession of Medicine and any other lawful activities (other than the banking or trust company business) not prohibited to a Corporation engaging in such profession by applicable laws and regulations.

III

This Corporation is a Professional Corporation within the meaning of Part 4 of Division 3 of Title 1 of the California Corporations Code.

IV

The name in the State of California of this Corporation's initial agent for service of process is DUNG VAN LE, 4614 EL CAJON BOULEVARD, SUITE 7, SAN DIEGO, CALIFORNIA 92115.

At or about that time, California assigned to the corporation a corporate number. Five months later, in May 1983, the corporation applied for and received a Federal employer identification number.

Petitioner incorporated his medical practice in order to save taxes. He was the corporation's sole shareholder, sole director, sole officer, and sole physician. His corporate business began in San Diego, California, and it moved to Orange County, California (Orange County), in or about 1989.

During the subject years, petitioner called himself David Dung Le, he operated his corporation under the name DDL, and he personally performed all of DDL's medical services. During those years, DDL had an active business checking account that had been opened at a bank in Orange County contemporaneously with

petitioner's move there.[5]  In 1991, petitioner used the corporate and Federal employer identification numbers assigned to Dung Van Le, A Medical Corporation, to report and pay to California corporate estimated tax in the name of DDL.

C.  Attorney Checks

During the subject years, Ms. Le worked as DDL's office manager.  Her general duties included performing receptionist functions, maintaining DDL's books and records, processing incoming mail, and making bank deposits.  Her specific responsibilities included entering DDL's receipts into DDL's records.

DDL's receipts were primarily in the form of cash from patients or checks from Medi-Cal, Medicare, insurance companies, or various law offices.  The checks from the law offices (attorney checks) were a significant source of DDL's income and stemmed from medical services rendered by petitioner, in his capacity as DDL's employee, to clients of the payor/attorneys. Ms. Le recorded in DDL's records all of DDL's receipts but for many of the receipts which DDL received in the form of attorney checks.  The Les diverted many of the attorney checks to their personal use and did not report the amounts of the diverted checks to the Internal Revenue Service (either on DDL's corporate

_____

[5] The bank statements list the owner of the account as DDL "DBA ASIAN GARDEN MED'CL CLINIC".  The record does not elaborate on this pseudonym.

returns or on their individual returns).[6]  During the subject years, the Les diverted to their personal use attorney checks totaling $295,940 and $197,072, respectively.  Of the $295,940, the Les deposited $150,213 into their personal accounts, cashed $116,848, and converted $28,878 into cashier's checks (the $1 discrepancy is due to rounding).  Of the $197,072, the Les deposited $66,663 into their personal accounts, cashed $93,260, and converted $37,148 into cashier's checks (the $1 discrepancy is due to rounding).

D.  DDL's and the Les' Accountant

During the relevant years, Tuan Anthony Nguyen (Mr. Nguyen) performed accounting and tax return preparation services for DDL and the Les.  Among other things, he prepared for them profit and loss statements, quarterly payroll returns, the Les' individual income tax returns, and DDL's corporate income tax returns.  Ms. Le, who provided Mr. Nguyen with all of DDL's information that he relied upon to prepare DDL's 1990 and 1991 corporate income tax returns, informed Mr. Nguyen that all of DDL's income was reflected in its business bank account.  Mr. Nguyen also prepared for DDL 1990 and 1991 Forms W-2, Wage and Tax Statements, as to petitioner.  These forms, which were attached to the Les' 1990 and 1991 Federal individual income tax returns, respectively,

---

[6] DDL did report on its corporate income tax returns the amounts of the attorney checks which were deposited into DDL's bank account.

reported that DDL had paid wages to petitioner in his capacity as DDL's employee.

E.  1990 and 1991 Tax Returns

The Les filed joint 1990 and 1991 Federal individual income tax returns.  These returns were signed by both of the Les.  The Les reported on these returns that they had realized gross income in amounts which did not include the amount of any of the attorney checks.

Petitioner filed on behalf of DDL 1990 and 1991 Federal corporate income tax returns.  Those returns, which petitioner signed in his capacity as an officer of DDL, reported that DDL was incorporated on January 3, 1983,[7] and that DDL owned as of the end of each respective year a significant dollar amount of assets.[8]  The corporate returns also reported for each respective year that DDL had realized a significant dollar amount of gross receipts and had paid a significant dollar amount of varied expenses, including an expense for petitioner's officer compensation.

_____

[7] Whereas petitioner actually incorporated his medical practice on Dec. 22, 1982, we consider DDL's tax returns to state erroneously that it was incorporated on Jan 3, 1983.

[8] The respective returns report that DDL's assets and liabilities at the end of 1990 were $23,358 and $6,918, respectively, and at the end of 1991 were $23,891 and $3,588, respectively.  The respective returns also reported that DDL had retained earnings of $3,940 and $7,803.

The Commissioner commenced an audit of the individual and corporate 1990 and 1991 returns after discovering during the audit of a personal injury attorney that the attorney had written checks to various physicians and that those checks had been cashed. The revenue agent interviewed both of the Les as part of their and DDL's audit. During those interviews, both of the Les provided false, misleading, and inconsistent statements on DDL's check cashing activities, their involvement in those activities, and the completeness of DDL's books and records. On April 3, 1998, the Les agreed to extend to December 31, 1998, the time to assess their personal income tax liability for 1991. They later agreed on July 1, 1998, to extend that term until July 31, 1999.

Respondent determined that the amounts of the attorney checks which were diverted by the Les were includable in their gross income as constructive distributions received from DDL. As to 1990, respondent determined (and included in the notice of deficiency) that the Les failed to report constructive dividends of $201,341 and constructive long-term capital gains of $82,100. As to 1991, respondent determined (and included in the notice of deficiency) that the Les failed to report constructive dividends of $137,801 and constructive long-term capital gains of $62,034. Following the issuance of the notice of deficiency, respondent's national office analyzed DDL's earnings and profits to verify the portions of the distribution that under section 301(c) were

dividends, return of basis, and long-term capital gain.  On the basis of that analysis, respondent has since conceded that the 1990 distributions resulted in dividend income of $124,744 and long-term capital gains of $154,017 and that the 1991 distributions resulted in dividend income of $78,494 and long-term capital gains of $118,579.

F.  The Les' Indictment

Also during the audit, the Commissioner referred the Les' case to his criminal investigation division (CID).  During the course of the investigation by the CID, neither the Les nor their attorneys challenged petitioner's reporting position that he operated his medical practice through a corporation named "David Dung Le, M.D., Inc.".[9]  Subsequent to this referral, an indictment was filed against the Les on April 3, 1997, generally charging each of them with:  (1) Two counts (counts 1 and 2) of violating section 7206(1) as to their 1990 and 1991 Federal individual income tax returns and (2) two counts (counts 3 and 4) of violating section 7206(1) as to DDL's 1990 and 1991 Federal corporate income tax returns.  See United States v. David Dung Le and Kim Huong Le, Central District of California, Case No. SA CR 97-33.  The gist of the indictment was that the Les had willfully

_____

[9] In fact, we understand petitioners' counsel, Mr. Hagendorf, to have first challenged this reporting position in petitioners' motion for summary judgment filed with the Court on Apr. 25, 2002.

failed to include the amount of the attorney checks in DDL's 1990 and 1991 corporate gross income, that they had diverted those funds to their personal use, and that they had willfully failed to include the diverted amounts in their 1990 and 1991 individual gross income.

On September 17, 1997, petitioner pleaded guilty to counts 1 and 3 of the indictment. Count 1 charged him with willfully making and subscribing to a false 1990 Federal individual income tax return. Count 3 charged him similarly as to DDL's 1990 Federal corporate income tax return. As a factual basis of his plea, petitioner agreed:

> During calendar year 1990, as payment for medical services rendered by your medical practice, David Dung Le, M.D., Inc., you and your medical practice received checks from various law offices. Notwithstanding the fact that all of these checks constituted reportable business income to you and your corporation, you caused $295,940.90 in such checks to be deposited to your personal accounts, cashed and/or converted to cashier's checks so as to avoid having these checks reported as income to the Internal Revenue Service. You further failed to advise your tax preparer that these business checks had been so diverted.

> Thereafter, on or about April 11, 1991, you willfully signed a U.S. Joint Individual Tax Return, Form 1040, for calendar year 1990 which was verified by a written declaration that it was made under the penalties of perjury, and which you did [not] believe to be true and correct as to every material matter, in that said return reported adjusted gross income of $113,847, whereas as you knew, that adjusted gross income figure failed to reflect an additional $295,940.90 in reportable income.

> In addition, on or about September 28, 1991, you willfully made and subscribed a U.S. Corporation Income

> Tax Return, Form 1120, on behalf of David Dung Le,
> M.D., Inc., for calendar year 1990 which was verified
> by a written declaration that it was made under the
> penalties of perjury, and you did not believe to be
> true and correct as to every material matter, in that
> said return reported gross receipts of $248,359,
> whereas as you well knew, that figure failed to include
> $295,940.90 in additional gross receipts.

Petitioner acknowledged as to his plea agreement that he had "carefully reviewed every part of it with my attorney" before signing it.

Also on September 17, 1997, Ms. Le pleaded guilty to counts 1 and 3 of the indictment. Count 1 charged her with willfully subscribing to a false 1990 Federal individual income tax return in violation of section 7206(1). Count 3 charged her with aiding and abetting the willful subscription of a false 1990 Federal corporate income tax return in violation of section 7206(1). As a factual basis of her plea, Ms. Le agreed:

> During calendar years 1990 and 1991, you served as
> bookkeeper for your husband's medical practice, David
> Dung Le, M.D., Inc. During that calendar year, David
> Dung Le, M.D., Inc. received checks from various law
> offices in payment for medical services rendered.
> Notwithstanding the fact that all of these checks
> constituted taxable business income to David Dung Le,
> M.D. and to your husband, you caused, and aided and
> abetted the causing of, $295,940.90 in such checks to
> be deposited to your personal accounts, cashed and/or
> converted to cashier's checks so as to avoid having
> these checks reported as income to the Internal Revenue
> Service. You further failed to advise your tax
> preparer that these business checks had been so
> diverted.
>
> Thereafter, on or about April 11, 1991, you willfully
> signed a U.S. Joint Individual Tax Return, Form 1040,
> for calendar year 1990 which was verified by a written

-14-

declaration that it was made under the penalties of perjury, and which you did [not] believe to be true and correct as to every material matter, in that said return reported adjusted gross income of $113,847, whereas as you knew, that adjusted gross income figure failed to reflect an additional $295,940.90 in reportable income.

In addition, on or about September 28, 1991, your husband willfully made and subscribed a U.S. Corporation Income Tax Return, Form 1120, on behalf of David Dung Le, M.D., Inc., for calendar year 1990 which was verified by a written declaration that it was made under the penalties of perjury, and which your husband did not believe to be true and correct as to every material matter, in that said return reported gross receipts of $248,359, whereas as you and your husband well knew, that figure failed to include an additional $295,940.90 in gross receipts. By having failed to deposit business checks into the David Dung Le, Md., Inc. business bank account and having failed to advise your tax preparer that the business checks had been so diverted, you knowingly aided, abetted and caused the above described subscribing to a false corporate return.

Ms. Le acknowledged as to her plea agreement that she had "carefully reviewed every part of it with my attorney" before signing it. In connection with her plea, Ms. Le served jail time.

G. Previous Case Involving DDL

DDL previously petitioned this Court to redetermine deficiencies in and other amounts related to its 1990 and 1991 Federal income taxes. We dismissed the case for lack of jurisdiction. See David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268 (2000). We held that DDL was a California corporation that lacked the capacity to engage in litigation

because California had suspended DDL's powers, rights, and privileges.  We noted that California's action resulted from DDL's failure to pay its California income taxes.  Upon appeal, our decision in <u>David Dung Le, M.D., Inc. v. Commissioner</u>, <u>supra</u>, was affirmed by the Court of Appeals for the Ninth Circuit.

OPINION

The parties assert, and we agree, that petitioners have the burden of proof as to all issues in this case except the issues of transferee liability and fraud penalties.  Respondent bears the burden of proof as to these latter two issues.  Secs. 6901(a), 7454(a); Rule 142(b), (d).

A.  <u>Status of DDL</u>

Petitioners argue that petitioner did not operate his medical practice in a corporate form in 1990 and 1991.  We disagree.  Petitioners agree that petitioner initially conducted his medical practice as a corporation but argue that petitioner abandoned practicing medicine through his corporation when he moved to Orange County.  On the basis of the record as a whole, including our observation and perception of petitioner when he testified at trial about this issue, we find petitioner's testimony incredible and decline to rely upon it to support petitioners' positions herein.[10]  <u>Neonatology Associates, P.A. v.</u>

---

[10] For similar reasons, we also find Ms. Le's testimony incredible and decline to rely upon it to support petitioners'
(continued...)

<u>Commissioner</u>, 115 T.C. 43, 84 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioner's testimony is clearly and convincingly contradicted by the credible evidence in the record. First, petitioner had during the relevant years a business checking account in the name of DDL. That account was actively used by DDL to cash all of the nondiverted checks that DDL received for services performed by petitioner in his capacity as DDL's employee. Second, petitioner filed 1990 and 1991 Federal corporate income tax returns reporting DDL's income and expenses for those years as corporate items. Those returns, which were signed personally by petitioner in his capacity as a DDL officer, reveal that petitioner considered himself an officer of a corporation named DDL and that DDL was realizing income and incurring expenses as if it were an active and ongoing corporate business. The returns also reveal that DDL owned assets as of the end of both 1990 and 1991. Given the additional fact that DDL during the subject years also reported and paid corporate estimated income tax to the State of California, we do not accept petitioners' claim that the corporate form of the medical practice was abandoned by petitioner before the subject years.

---

[10](...continued)
positions herein.

Such is especially so, considering that the Les acknowledged as part of their separate plea agreements that petitioner's medical practice was known during 1990 as "David Dung Le, M.D., Inc."[11], that DDL was active during that year, and that DDL during that year received the same attorney checks that are at issue herein in payment of medical services which were rendered on behalf of it. In light of these plea agreements, we reject petitioners' attempt to disavow their acknowledgments as set forth clearly in the agreements. We consider it unimportant that the corporate and Federal employer identification numbers used on the corporate returns and estimated payment vouchers were initially assigned to a corporation named "Dung Van Le, A Medical Corporation". Similarly, we place no importance with respect to petitioner's corporation's never having been registered with the State of California to do business as DDL. In both cases, petitioner called himself Dung Van Le when he incorporated his medical practice as Dung Van Le, A Medical Corporation. During the subject years, however, when he called himself David Dung Le, he simply used a different name for his corporation to reflect the change in his personal name. The fact that petitioner did not notify the State of California that he had changed the name of his medical practice to reflect his change in name does not

---

[11] Ms. Le also acknowledged in her plea agreement that petitioner's medical practice was known as DDL in 1991.

mean that his medical practice, which petitioner represented to the public and to the Commissioner as a corporation named "David Dung Le, M.D., Inc.", may escape Federal taxation as a corporation.[12]

B.  Constructive Distributions

Absent a provision to the contrary, funds which a shareholder diverts from a corporation are generally includable in the shareholder's gross income under section 61(a) to the extent that the shareholder has dominion and control over them. See also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  One example of a contrary provision is section 301 where Congress has provided that funds (or any other property) distributed by a corporation to a shareholder with respect to his or her stock are to be taxed under the provisions of section 301(c).  Under section 301(c), a constructive distribution is

---

[12] Petitioners' argument that DDL never existed is even more audacious given that DDL attempted to litigate in this case the merits of DDL's liabilities and thereafter appealed to the Court of Appeals for the Ninth Circuit our decision that DDL lacked capacity to litigate by virtue of the fact that it was a corporation with suspended powers.  In light of the record as a whole, including especially the Les' plea agreements and DDL's filing of corporate income tax returns, we consider petitioners' argument herein that petitioner did not operate his medical practice through a corporation known as "David Dung Le, M.D., Inc." to be frivolous.  We also consider that it appears to have been unreasonable for Mr. Hagendorf to have refused to stipulate on behalf of his client to certain undisputed facts as to the incorporation of petitioner's medical practice, facts, we note, which petitioner later testified at trial without contradiction to be true.

taxable to the shareholder as a dividend only to the extent of the corporation's earnings and profits.  Any excess is a nontaxable return of capital to the extent of the shareholder's basis in the corporation.  Any remaining amount is taxable to the shareholder as capital gain.  Sec. 301(c)(2) and (3); Truesdell v. Commissioner, 89 T.C. 1280, 1295-1298 (1987).

On the basis of the record before us, we are convinced: (1) The Les had full dominion and control of DDL's funds; i.e., the diverted attorney checks, and (2) they diverted those funds for their personal use.  In fact, as to 1990, they admitted as much in their plea agreements.[13]  Petitioners do not challenge respondent's analysis as to the tax treatment of the constructive distributions from DDL.  We have reviewed those calculations, and finding no error therein, we sustain respondent's calculation of the amounts of the constructive distributions that are dividends and long-term capital gains.

C.  Fraud Penalties

Respondent determined that the Les are liable for fraud penalties under section 6663(a).  Section 6663(a) imposes a

---

[13] Whereas petitioners stress that all of the attorney checks were made out to petitioner personally, given the plea agreements, we find this to be but one more step in the Les' goal to hide this income from the IRS.  We also reject petitioners' assertion that the Les were naive, unsophisticated, and incompetent as to tax matters.  In fact, the Les willfully concealed the receipt of the attorney checks by petitioner and DDL.  They were caught because the Commissioner was auditing the personal injury attorney.

penalty of 75 percent of the portion of an underpayment that is attributable to fraud. In order for the Court to sustain respondent's determination as to the applicability of these penalties to the Les, respondent must prove by clear and convincing evidence: (1) The Les underpaid their taxes for 1990 and 1991, and (2) some part of each underpayment was due to fraud. Once respondent has met this burden, we consider all of the underpayment to be attributable to fraud unless petitioners establish otherwise. Sec. 6663(b).

On the basis of our review of the record, we conclude that respondent has proven the first prong of the two-part test. The record establishes clearly and convincingly that petitioners failed to include the distributions in their 1990 and 1991 gross income. We conclude that respondent has proven that petitioners underpaid their Federal income taxes for both 1990 and 1991.

As to the second prong of the test; i.e., the presence of fraud, the existence of fraud is a question of fact. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed; it must be established by independent evidence that establishes a fraudulent intent on the taxpayer's part. Otsuki v. Commissioner, 53 T.C. 96 (1969). Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences may be drawn

from the relevant facts.  Spies v. United States, 317 U.S. 492 (1943); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984).  Where fraud is determined for multiple years, as is the case here, respondent must establish the requisite fraudulent intent for each of the years in order to prevail as to all of the years.  The Court may sustain respondent's determination of fraud only as to those years for which the fraudulent intent is established clearly and convincingly.  Fraud requires a showing that the taxpayer intended to evade a tax known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax.  Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d. Cir. 1968).

We often rely on certain indicia of fraud in deciding the existence of fraud.  The presence of several indicia is persuasive circumstantial evidence of fraud.  Beaver v. Commissioner, 55 T.C. 85, 93 (1970).  The "badges of fraud" include:  (1) Understatement of income; (2) maintenance of inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of income or assets; (6) failure to cooperate with tax authorities; (7) engaging in illegal activities; (8) dealing in cash; (9) failure to make estimated tax payments; and (10) filing false documents.  Spies v. United States, supra;

Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).

Following our consideration of the relevant badges of fraud, we conclude that respondent has clearly and convincingly proven the requisite fraudulent intent on the part of the Les for each year in issue. The Les understated their income on their 1990 and 1991 individual tax returns by not recognizing income from the attorney checks which they diverted from DDL in the amounts totaling $295,941 and $197,673, respectively. They attempted to conceal this income by not recording those checks in DDL's records (i.e., by not maintaining proper records for DDL), by not depositing those checks into DDL's bank account, by not advising their tax preparer of the checks' existence, and by not reporting the diverted funds on DDL's corporate income tax returns or on their individual income tax returns. They engaged in illegal activities in that they filed fraudulent tax returns. They provided implausible or inconsistent explanations of their behavior. They failed to cooperate with tax authorities. They pleaded guilty to certain charges as to their and DDL's 1990 income tax returns. Although a conviction under section 7206(1) does not by itself establish intent to evade tax, since the existence of such intent is not an element of the crime, the

indictment and petitioners' plea agreements in this case are probative of petitioners' fraudulent intent. Wright v. Commissioner, 84 T.C. 636, 643-344 (1985). We also note as to 1990 that the Les both acknowledged in their separate plea agreements that the attorney checks were taxable income to petitioner, that they failed to advise their tax preparer about the diverted funds, and that they knew that their taxable income was underreported.

We hold that petitioners are liable for the fraud penalties for 1990 and 1991 determined by respondent under section 6663(a).

D. Transferee Liability

DDL has unpaid income tax liabilities which respondent seeks to collect from the Les in their capacity as transferees of DDL's assets. Section 6901 allows the Commissioner in certain cases to collect from a transferee of assets unpaid taxes owed by the assets' transferor if a basis exists under State law or equity for holding the transferee liable. Bresson v. Commissioner, 111 T.C. 172 (1998), affd. 213 F.3d 1173 (9th Cir. 2000); Gumm v. Commissioner, 93 T.C. 475, 479 (1989). Section 6901 does not create the liability of a transferee, but is merely a secondary method for enforcing a transferor's existing liability. Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). Here, in order to prevail on this issue, respondent must prove that he has satisfied the procedural requirements of section 6901(a) and that

petitioner and Ms. Le are liable as transferees under State law or equity. Sec. 6902(a); Gumm v. Commissioner, supra at 479-480.

We begin with the procedural requirements. They are: (1) That the alleged transferee received property of the transferor; (2) that the transfer was made without adequate consideration; (3) that the transfer was made during or after the period for which the transferor's tax liability accrued; (4) that either the transferor was insolvent before or because of the transfer of property, or the transfer of property was one of a series of distributions of property that resulted in the insolvency of the transferor; (5) that all reasonable efforts to collect from the transferor were made, and further collection efforts would be futile; and (6) the value of the transferred property (which determines the limit of the transferee's liability). Gumm v. Commissioner, supra at 480.

On the basis of the record, we conclude that respondent has met each of these procedural requirements. First, the Les received corporate funds from DDL in each subject year as indicated by the diverted checks. Second, corporate funds were diverted from the corporation to the Les without adequate consideration. Third, the Les diverted these funds while DDL's tax liabilities for the subject years accrued. Fourth, taking into account DDL's unpaid tax liabilities, DDL did not have sufficient assets to pay all of its debts. Fifth, respondent has

previously issued a notice of deficiency to DDL and assessed the Federal corporate income taxes (inclusive of penalties) listed therein. Given DDL's financial position, it would be futile for respondent to attempt to collect the delinquent debt from DDL. Sixth, the amount of the attorney checks diverted by the Les in each year ($295,940 and $197,072, respectively) totaled greater than DDL's corresponding Federal income tax liabilities (inclusive of penalties).

We now turn to whether the Les are liable as transferees under applicable State law or equity. Given that the diversion of funds occurred in California, the applicable State law is that of California. In 1986, California adopted the Uniform Fraudulent Transfer Act (UFTA), effective with transfers made or obligations incurred after January 1, 1987. Cal. Civ. Code, sec. 3439.12 (West 1997). In that the diversions of funds at issue all occurred after January 1, 1987, we conclude that California's version of the UFTA applies. That version, which is codified at Cal. Civ. Code secs. 3439-3439.12, allows transfers to be set aside by present or future creditors for either actual fraud (sec. 3439.04(a)) or constructive fraud (sec. 3439.04(b)).

In order to establish transferee liability under an actual fraud theory, respondent must show that the transferor acted with actual intent to defraud a creditor. In determining such an intent, courts have considered certain "badges of fraud". Lyons

v. Sec. Pac. Natl. Bank, 48 Cal. Rptr. 2d 174, 185 (1995).
Although California has not expressly codified these "badges of
fraud", the legislative history of its version of the UFTA
demonstrates that indicia of intent should be given consideration
in determining whether a taxpayer has acted with intent to
hinder, delay, or defraud a creditor.  Annod Corp. v. Hamilton &
Samuels, 123 Cal. Rptr. 2d 924 (Cal. App. 2002).  The record
before us establishes an actual intent to defraud creditors by
DDL through the actions of its sole officer, petitioner, and by
its office manager, Ms. Le.  See Benes v. Commissioner, 42 T.C.
358, 383 (1964) (fraud of a sole or dominant shareholder can be
attributed to the corporation), affd. 355 F.2d 929 (6th Cir.
1966); Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 194 (1953)
(same), affd. 216 F.2d 693, 697-98 (1st Cir. 1954).  DDL, through
the actions of these individuals, caused a substantial amount of
its corporate funds to be diverted to the Les in 1990 and 1991.
The Les attempted to conceal this diversion either by cashing the
corporate checks, by depositing them into their personal bank
accounts, or by converting them into cashier's checks.  As a
result of this diversion, DDL was left without sufficient assets
to pay its tax liabilities on the income connected to the
diverted funds.

We conclude that an actual intent to defraud the
Commissioner existed when the corporate receipts were diverted by

the Les.  Accordingly, we sustain respondent's determination that the Les, as transferees, are liable for DDL's unpaid 1990 and 1991 income tax liabilities (inclusive of penalties).[14]

E.  Period of Limitations

Respondent generally must assess tax against individual taxpayers such as the Les within 3 years of the later of the due date or filing date of their return.  Sec. 6501(a) and (b)(1); Mecom v. Commissioner, 101 T.C. 374, 382 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994).  One exception to this general rule is that in the case of a "false or fraudulent return" with the intent to evade tax, the tax may be assessed at any time.  Sec. 6501(c)(1).  Respondent bears the burden of proving fraud in this context.  Sec. 7454(a); Rule 142(b).  In that we have already concluded above that respondent has met his burden of proof as to fraud in each year, we conclude that assessment of petitioners' 1990 and 1991 tax liabilities is not barred by the statute of limitations.[15]

---

[14] Because we find that petitioners had the actual intent to defraud the Government, we do not need to address whether there was constructive fraud under Cal. Civ. Code sec. 3439.04(b) (West 1997).

[15] Respondent alternatively argued that the period of limitations has not run because the Les' omission of income was "substantial" under sec. 6501(e)(1)(A).  We need not and do not consider this argument.  We also need not and do not consider respondent's other alternative argument that the period of limitations for 1991 remains open given the timely extension for that year.  See sec. 6501(c)(4).

All of the parties' arguments not discussed herein have been considered and rejected as irrelevant and/or without merit.

<u>Decisions will be entered under Rule 155</u>.