T.C. Memo. 2008-26

UNITED STATES TAX COURT

ROBERT M. SCHARRINGHAUSEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4427-06L.            Filed February 12, 2008.

Richard L. Fahey, for petitioner.

Karen Sommers, for respondent.

MEMORANDUM OPINION

HOLMES, Judge:  Robert Scharringhausen files income tax
returns but does not always pay the tax due, a habit that finds
him owing more than $30,000 for the tax years 2001-03.  The
Commissioner assessed the amount due, and filed a notice of
federal tax lien (NFTL) to protect the government's interest
against the many other creditors Scharringhausen has accumulated.

Scharringhausen offered to compromise his tax bill for $750, but the IRS returned his offer because he hadn't paid his 2004 tax bill either. His main argument is that this was an abuse of discretion.

## Background

Scharringhausen's history of not paying his taxes reaches back at least to the early '90s--there is an outstanding judgment against him for nearly $500,000 for unpaid income taxes for 1991 and 1992, and for trust-fund-recovery-penalty taxes for 1990 and 1991.[1] He and some of the firms he controlled also had other problems, and later in the decade he served a short sentence for bankruptcy fraud. After being released, he went back into business, but failed to file returns in 1999 and 2000. See Scharringhausen v. United States, 91 AFTR 2d 651, 2003-1 USTC par. 50,224 (S.D. Cal. 2003) (enforcing summons for records of offshore credit card use).

---

[1] Taxes that employers withhold from their employees' wages are known as "trust fund taxes" because they are deemed a special fund in trust for the United States under section 7501(a). Slodov v. United States, 436 U.S. 238, 243 (1978). The Commissioner may collect unpaid employment taxes from a "responsible person" within the company; i.e., someone who was required to pay over the tax. The money that's collected is called a trust-fund-recovery-penalty tax. Sec. 6672. (Unless otherwise indicated, all section references are to the Internal Revenue Code and Regulations for the years at issue, and the one Rule reference is to Rule 122 of the Tax Court Rules of Practice and Procedure.)

In 2001 he filed an untimely return showing that he owed no tax, but the Commissioner later assessed a deficiency for that year of slightly more than $1000. For 2002 and 2003, Scharringhausen filed timely returns that showed tax due, but he had not made estimated tax payments and did not pay the taxes with the return. The Commissioner assessed the tax shown on the returns for those years along with additions and interest for a total balance of over $30,000. For his 2004 year, Scharringhausen again filed a return--this one showing more than $16,000 owed--but again made no estimated tax payments and no payment with the return.

About the same time he filed his 2004 return, Scharringhausen offered to settle his 2001-03 tax debt for a mere $750, citing "doubt as to collectibility." The Commissioner returned this offer as "nonprocessable" because Scharringhausen was "noncompliant" in that he had failed to pay his 2004 taxes. After rejecting the compromise offer, the Commissioner filed an NFTL for the years 2001-03. Scharringhausen received a Collection Due Process (CDP) Notice of the NFTL and then timely requested a CDP hearing. He also submitted a new offer-in-compromise (OIC), offering to settle his unpaid 2004 tax bill as well, again on grounds of doubtful collectibility. This time he submitted a Form 433-A Collection Information Statement for Wage Earners and Self-employed Individuals reflecting 21 creditors'

judgments against him totaling nearly $1.3 million.  But he refused to have the settlement officer conducting the CDP hearing consider this new offer, preferring to have it "worked on" by the IRS Appeals office in Tennessee to which he had sent it.

This left the settlement officer conducting the hearing with nothing to do but review Scharringhausen's IRS records and the transcripts reflecting the IRS's rejection of Scharringhausen's first offer (for 2001-03), verify whether all applicable legal and administrative requirements had been met, and consider Scharringhausen's contention that the tax lien was improperly filed and should be withdrawn.  She concluded the hearing by sustaining the lien and issuing a notice of determination.

Scharringhausen, a resident of California when he filed his petition, appeals.  The parties stipulated the facts and submitted the case for decision without trial under Rule 122.

## Discussion

Once a taxpayer fails to pay taxes after the IRS has sent him a demand for payment, his tax liability becomes a lien in favor of the United States against all of his real and personal property.  Sec. 6321.  Filing a notice of that lien is nevertheless important because it gives the lien priority against later-filing competing creditors.  See sec. 6323(a); Behling v. Commissioner, 118 T.C. 572, 575 (2002).  It also opens a short window of time during which a taxpayer may demand a hearing to

check whether the Commissioner properly filed the lien, and take a second look at whether the filing should be sustained. This hearing is also a taxpayer's chance to raise an innocent-spouse defense, offer collection alternatives, or demonstrate that the Government's collection effort is overly intrusive even after taking into account the need to efficiently collect taxes.

Scharringhausen isn't challenging his underlying tax liability, so we review the Commissioner's determination to see if he abused his discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). Courts generally hold that a decisionmaker abuses his discretion "when [he] makes an error of law * * * or rests [his] determination on a clearly erroneous finding of fact * * * [or] 'applies the correct law to facts which are not clearly erroneous but rules in an irrational manner'." United States v. Sherburne, 249 F.3d 1121, 1125-26 (9th Cir. 2001) (quoting Friedkin v. Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996)); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-03 (1990) (same).

We can distill Scharringhausen's objections to the notice of determination into two: that the Commissioner didn't follow correct procedures in filing the lien, and that the Commissioner should have accepted his first offer to compromise the taxes involved.

A.  Was the Lien Properly Filed?

The federal tax lien is imposed automatically once the assessment is made.  Sec. 6321.  No one disputes that the Commissioner properly assessed Scharringhausen's 2001-03 taxes before the NFTL's filing in May 2005, that he mailed notice-and-demand letters to Scharringhausen within 60 days of each assessment's date, and that the taxes remain unpaid.  Thus the settlement officer correctly found that the NFTL was not filed prematurely, or in violation of IRS procedures.  Scharringhausen (as best we can tell) argues that the NFTL was nevertheless procedurally improper because section 6323(j)(1) gives discretion to the Commissioner to withdraw a lien if, for example, it would facilitate tax collection.  Sec. 6323(j)(1)(C).  This is a true statement, but we're hard pressed to see how withdrawing the NFTL could possibly help collect the tax, given that Scharringhausen had over $1 million in other outstanding judgments against him.

Nor did Scharringhausen satisfy the other provision of section 6323 that he cited in the record--section 6323(j)(1)(D)--which allows the NFTL to be withdrawn if doing so would be in the best interests of the taxpayer and the United States.  Though we don't doubt that the withdrawal of the lien would benefit Scharringhausen, we're equally hard pressed to see how it would benefit the United States, since the 21 judgment liens already in place against Scharringhausen make it much more likely that

withdrawing the lien would simply cause the government to lose its priority status against other creditors.[2]

B.    Was It an Abuse of Discretion Not To Reconsider Rejection of Scharringhausen's First OIC?

Scharringhausen also contends that his offer to compromise his 2001-03 taxes was improperly returned as "nonprocessable" because he failed to pay his 2004 taxes.  He cites Chavez v. United States, 93 AFTR 2d 2004-2386, at 2004-2391 (W.D. Tex. 2004) to support his contention that a "blanket" refusal to process an OIC for noncompliance is an abuse of discretion.  We, however, have held that "reliance on a failure to pay current taxes in rejecting a collection alternative does not constitute an abuse of discretion."  Giamelli v. Commissioner, 129 T.C. 107, 111-12 (2007).  And at least the Fifth, Sixth, and Seventh Circuits agree with us.  Christopher Cross, Inc., v. United States, 461 F.3d 610, 613 (5th Cir. 2006); Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), affg. 123 T.C. 1 (2004); Living Care Alternatives of Utica, Inc. v. United States, 411 F.3d 621, 630-31 (6th Cir. 2005).

---

[2] The two other reasons for granting relief from the filing of a NFTL are that the IRS didn't follow proper procedures, sec. 6323(j)(1)(A), and that the taxpayer involved is current on an installment agreement, sec. 6323(j)(1)(B).  The first is not present here--the settlement officer reviewed the procedural checklist and found the IRS had done its job correctly; the second doesn't apply because Scharringhausen had no installment agreement.

In <u>Orum v. Commissioner</u>, 412 F.3d at 821, Judge Easterbrook explained:

>     It would not do the Treasury any good if taxpayers used the money owed for 2004 to pay taxes due for 1998, the money owed for 2005 to pay taxes for 1999, and so on.  That would spawn more collection cycles yet leave a substantial unpaid balance.  The Service's goal is to reduce and ultimately eliminate the entire tax debt, which can be done only if current taxes are paid while old tax debts are retired. * * *

Scharringhausen nevertheless claims that the Commissioner violated his own Internal Revenue Manual (IRM) procedures in not reconsidering the rejection of his OIC.  The IRM, however, has no force of law and gives no rights to taxpayers.  <u>Fargo v. Commissioner</u>, 447 F.3d 706, 713 (9th Cir. 2006), affg. T.C. Memo. 2004-13; <u>Thoburn v. Commissioner</u>, 95 T.C. 132, 141 (1990).  And we are puzzled by Scharringhausen's insistence that the lien was improperly sustained because his 2001-03 OIC was improperly rejected, when he refused to have his 2001-04 offer considered as a collection alternative.  It is no abuse of discretion not to consider what a taxpayer asks not to be considered.

Scharringhausen's final argument is that "[t]he IRS'[s] current processes continue to prevent taxpayers from utilizing the Offer in Compromise by imposing barriers to entry and unnecessarily returning offers."  This is not reason for finding an abuse of discretion in this case--establishing a general procedure for deciding when to accept OIC and when to proceed by

lien or levy is, as Judge Easterbrook concluded, "the sort of decision committed to executive officials."  <u>Orum</u>, 412 F.3d at 821.  That the IRS has exercised that discretion by limiting compromises based on doubt as to collectibility to those taxpayers suffering from real financial hardship, rather than to those trying to give the IRS *tsuris* by making multiple lowball offers and frustrating efforts to chase assets that have possibly moved offshore is perfectly reasonable.

Because there are no grounds on which to overturn the filing of the NFTL, it is sustained and

<u>Decision will be entered for</u>

<u>respondent</u>.