T.C. Memo. 2012-350

UNITED STATES TAX COURT

ROBERT M. SCHARRINGHAUSEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24382-06.                     Filed December 19, 2012.

Robert M. Scharringhausen, pro se.

Jeffrey A. Schlei, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  The petition in this case involves petitioner's 1999, 2000,

and 2001 Federal income tax.  In the notice of deficiency, respondent determined

[*2] deficiencies, additions to tax under section 6651(a)(1)[1] for failure to file, and fraud penalties under section 6663, as follows:

|  |  | Additions to tax and penalties | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6663 |
| 1999 | $41,786 | $10,446.50 | $31,339.50 |
| 2000 | 52,583 | 13,145.75 | 39,437.25 |
| 2001 | 78,572 | 19,881.50 | 58,929 |

The issues for decision are: (1) whether petitioner failed to report income for 1999, 2000, and 2001 of $174,838.79, $157,841.80, and $230,194.04, respectively. We hold that he did; (2) whether petitioner is entitled to net operating loss (NOL) deductions for the years at issue. We hold that he is not; (3) whether petitioner is liable for additions to tax under section 6651(a)(1) for his failure to timely file Federal income tax returns. We hold that he is; and (4) whether petitioner is liable for fraud penalties under section 6663. We hold that he is.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

**[*3]**                                FINDINGS OF FACT

The parties filed with the Court a stipulation of facts and related exhibits. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. We find the facts accordingly. Petitioner resided in San Diego, California, when he filed the petition.

For more than a decade and a half, petitioner has been entangled in legal battles with the United States. Petitioner was indicted in 1996 in U.S. District Court for mail fraud, money laundering, and bankruptcy fraud; he was subsequently found guilty of bankruptcy fraud for hiding certain assets from the bankruptcy court by knowingly and fraudulently making false and material financial statements in separate bankruptcy proceedings, for which he served a short sentence. See United States v. Scharringhausen, No. 96 CR 415-H-1 (S.D. Cal. Nov. 14, 1997). The Government had also brought a tax assessment action against petitioner seeking to collect Federal income tax liabilities for 1991 and 1992 as well as trust fund recovery penalty assessments under section 6672. See United States v. Scharringhausen, 226 F.R.D. 406, 407 (S.D. Cal. 2005). For his part, petitioner had attempted to fight off certain administrative summonses that respondent had issued concerning the tax years at issue, by petitioning the District Court to quash these summonses. See Scharringhausen v. United States, No. 02-

**[\*4]** cv-2076, 2003 WL 352764 (S.D. Cal. 2003); <u>Scharringhausen v. United States</u>, No. 02-cv-2343 (S.D. Cal. 2003) (order denying petitioner's motion to quash and granting Government's motion to summarily enforce summons issued to Pacific Bell); <u>Scharringhausen v. United States</u>, No. 02-cv-2499-H, 2003 WL 21517775 (S.D. Cal. 2003). In addition, petitioner had filed a petition with this Court to contest respondent's filing of a tax lien against him for tax liabilities for 2001 through 2003, see <u>Scharringhausen v. Commissioner</u>, T.C. Memo. 2008-26, 95 T.C.M. (CCH) 1109 (2008) (sustaining respondent's filing of notice of Federal tax lien against petitioner's property for outstanding tax liabilities owed for 2001 through 2003), as well as a civil suit against the Government in the District Court under section 7433 for damages resulting from respondent's alleged violations of section 7602(c)(2) and section 301.7602-1(c), Proced. & Admin. Regs., see <u>Scharringhausen v. United States</u>, No. 06-cv-2167, 2010 WL 2735750, at \*4-\*6 (S.D. Cal. 2010).

After he completed his sentence for bankruptcy fraud, he purportedly went into different business dealings in real estate development and marketing nutritional supplements. The record is devoid of details of the specific nature of these businesses or their day-to-day operations because petitioner has not provided any.

[*5]   In and around 2000, respondent instituted a project to identify taxpayers who were holders of credit cards issued by banks in off-shore tax havens because these credit cards tended to provide opportunities for their holders to evade Federal income tax.  A series of John Doe summonses resulted in a list of taxpayers who had been issued credit cards by Cayman National Bank; petitioner, who at the time had not filed his Federal income tax returns for 1999 through 2001, was on the list.  Preliminary investigation indicated that petitioner might be conducting personal transactions and business activities through multiple fictitious businesses and entities, none of which had filed Federal income tax returns for at least 1999 and 2000.  See Scharringhausen, 2003 WL 352764; Scharringhausen, No. 02-cv-2343 (order denying petitioner's motion to quash and granting Government's motion to summarily enforce Pacific Bell summons).

Following the leads, the Internal Revenue Service (IRS) agent in charge of the investigation, Huong T. Phan, attempted to contact petitioner about why neither he nor the businesses he ostensibly owned had filed tax returns for the subject years.  On separate occasions Agent Phan attempted to interview petitioner and his accountant, Gary List, to elicit income information for the years at issue, but petitioner was uncooperative and provided little information.  Petitioner's continued resistance to cooperating with Agent Phan in the audit left Agent Phan

[*6] with no choice but to obtain the information from third-party sources. In October 2002 respondent issued administrative summonses directing Wells Fargo Bank and other financial institutions to produce petitioner's financial and banking records in their possession. Petitioner intervened and petitioned the District Court to quash these summonses. See Scharringhausen, 2003 WL 352764; Scharringhausen, No. 02-cv-2343; Scharringhausen, 2003 WL 21517775.

After considering the parties' pleadings and moving papers, the District Court in January 2003 ordered the summonses to Wells Fargo Bank enforced after finding that the IRS had met the standard announced in United States v. Powell, 379 U.S. 48 (1964), for enforcing administrative summonses.[2] The District Court found the IRS had made a prima facie showing that it had a legitimate purpose in issuing these summonses because it was conducting examinations with regard to petitioner's 1999 and 2000 tax liabilities and had begun looking into petitioner's 2001 tax liabilities; the District Court also concluded that petitioner's bare assertions of possible nefarious motives were not supported by specific facts and evidence. See Scharringhausen, 2003 WL 352764 at *3. Additionally, the District Court found the IRS had established a prima facie showing of relevance because

---

[2]The notice of deficiency relied on bank records produced from the summonses issued to Wells Fargo Bank only.

**[*7]** the information the summonses sought might shed light on the financial activities of the business entities through which the IRS believed petitioner earned income in the relevant years. Id. Finally, the District Court found the IRS had made a prima facie showing that the information sought was not already in the agency's possession and that the agency had followed all requisite administrative steps.[3] Id. at *3-*4. Using the records produced from these summonses, Agent Phan was able to identify 15 bank accounts over which petitioner had signature authority and at least 11 entities that petitioner owned. None of the bank accounts were in petitioner's name.

Of all the entities and bank accounts identified, Agent Phan focused on four entities and their bank accounts: R Michael Construction, Pacific Sun Construction, Inc. (Pacific Sun), Torrey Beach, Inc. (Torrey Beach), and 4181 Mississippi, Inc (4181 Mississippi).[4] It is undisputed that these entities did not file Federal income tax returns for the years at issue.[5] Except for R Michael

---

[3]Our record shows Agent Phan sent notices in the form of Letter 3164 together with the initial contact letter to petitioner before she contacted any third party, in compliance with sec. 7609(a).

[4]The bank records relating to these accounts were produced in response to the Wells Fargo Bank summonses. In her income reconstruction, Agent Phan relied only on bank records produced from the Wells Fargo Bank summonses.

[5]R Michael Construction was the subject of an IRS audit for 1999 and 2000.
(continued...)

[*8] Construction and 4181 Mississippi, the entities did not have employer identification numbers. No one besides petitioner had signature authority over the bank accounts belonging, at least in name, to these entities.

In May 2003 while petitioner's audit was underway, petitioner filed his Federal income tax returns with respondent for the three years at issue. Both the 1999 and 2000 returns reported substantial business losses on Schedule C, Profit or Loss from Business, and the 2001 return reported a modicum of business income but claimed substantial net operating loss (NOL) carryovers. Finding inconsistencies between the late-filed returns and petitioner's previous statements to Agent Phan as well as petitioner's bank records obtained through the summonses, Agent Phan concluded petitioner had underreported his income and thus rejected petitioner's returns.

With extensive bank records in hand, Agent Phan reconstructed petitioner's income and made several determinations. First, Agent Phan determined that unexplained deposits of approximately $3.5 million were made to the four bank accounts held by the four businesses that were the focus of the audit. Agent Phan also determined that petitioner owned these four entities, a fact that petitioner has

---

[5](...continued)
As a result of the audit, the Commissioner assessed tax deficiencies of approximately $125,000 and $65,000 for 1999 and 2000, respectively.

[*9] not sought to dispute. Then she disregarded the corporate form of these four fictitious businesses as entities separate from their owner and treated income of these entities as income to petitioner since petitioner had sole control of their bank accounts and none of these entities had filed Federal income tax returns or paid any Federal income taxes.

But to be conservative, Agent Phan considered only amounts of withdrawals that personally benefited petitioner.[6] First, Agent Phan treated checks petitioner wrote to himself as income to him. She also took into account withdrawals that petitioner made to purchase cashier's checks that he used to make payments on his Cayman National Bank credit card account. Finally, Agent Phan included in petitioner's income checks petitioner wrote to John Fikes--who was petitioner's equity partner in R Michael Construction, Pacific Sun, and 4181 Mississippi--and to several other individuals and entities[7] because those payments were made for petitioner's personal benefit and were not business expenses deductible by the entities on whose bank accounts the checks were drawn. For the three years at

---

[6]In his answer to the petition, respondent argues an alternative theory under which the amounts charged to petitioner would be constructive dividends.

[7]These individuals and entities included Brad Dingham, Heidi Humphreys, Dawn Landrum, Dan Sanders, Heather Winger, petitioner's son Michael Scharringhausen, San Diego Travel, and Havasu Springs Resort.

[*10] issue, Agent Phan sourced petitioner's income with substantive evidence, as follows:

| Year | R Michael Construction | Pacific Sun | Torrey Beach | 4181 Mississippi |
|------|------------------------|-------------|--------------|------------------|
| 1999 | $91,978.58 | $53,455.82 | $29,404.39 | - - - |
| 2000 | 59,716.80 | 59,716.80 | 28,508.20 | $9,900.00 |
| 2001 | - - - | 75,207.37 | 20,958.49 | 134,028.18 |
| Total | 151,695.38 | 188,379.99 | 78,871.08 | 143,928.18 |

In total, Agent Phan determined that petitioner had $562,874.63 of unreported income.

In addition to the income determinations, Agent Phan identified several indicia of fraud in the course of the audit. First, petitioner persistently refused to cooperate with Agent Phan in his audit. Further, petitioner failed to file his Federal income tax returns for several years. And when he did file his returns after respondent had commenced the audit, petitioner underreported his income for multiple years. Moreover, petitioner did not hold any of the bank accounts under his name but rather held them under various business entities that he used to route and reroute his money to conceal the personal nature of his expenses. Finally, he failed to maintain adequate books and records for these businesses and made multiple cash withdrawals from their bank accounts to pay his Cayman National Bank credit card account. In March 2004 Agent Phan referred the case to the

[*11] Criminal Investigation Division (CID) of the IRS, but the referral was rejected six weeks later.

At trial in San Diego, California, petitioner challenged some of Agent Phan's findings but did not testify himself; he prosecuted his case solely on the basis of the testimony of three witnesses: Mr. Fike, Mr. List, and Agent Phan. Neither petitioner nor any of his witnesses disputed that petitioner owned the four business entities, that none of these entities paid any Federal income tax, or that he wrote the checks on which Agent Phan relied to reconstruct his income. Petitioner disputed only whether some of these check withdrawals were made for his own benefit.

In addition to questioning Agent Phan's income characterization of these numerous check withdrawals, petitioner argues on brief that respondent's determinations in the deficiency notice were based on information acquired through invalid administrative summonses and the civil audit was a criminal investigation in disguise. Petitioner has also raised at trial a different but related argument that the notice of deficiency was arbitrary and capricious because it was a part of the Government's vendetta against him in connection with its prior criminal prosecution in the District Court for fraud and money laundering.

[*12]                               OPINION

I.      Respondent's summonses and the civil audit

        A.      Res judicata and collateral estoppel

        Petitioner's primary argument on brief is that the summonses leading to the

discovery of the Wells Fargo Bank records on which respondent based his

determinations in the notice of deficiency were improperly issued.  Specifically,

petitioner argues the issuing of these summonses violated section 7602(d) because

respondent issued them while a referral for criminal prosecution was pending.

Petitioner further claims that respondent violated section 7602(c) by making

impermissible third-party contacts without first notifying petitioner.  These

arguments are foreclosed by res judicata and collateral estoppel because they were

raised and rejected in the District Court's petition-to-quash proceeding in which the

District Court ordered the Wells Fargo Bank summonses enforced.[8]  See

Scharringhausen, 2003 WL 352764.

        Under res judicata, or claim preclusion, a final judgment on the merits in a

prior suit bars a second suit involving the same cause of action and the same

_____

        [8]Respondent has not asserted res judicata or collateral estoppel as affirmative
defenses.  See Rule 39.  However, in the interest of promoting judicial economy, the
Court may raise res judicata and collateral estoppel on its own initiative.  See
Holloway Constr. Co. v. DOL, 891 F.2d 1211, 1212 (6th Cir. 1989); Monahan v.
Commissioner, 109 T.C. 235, 250 (1997).

**[*13]** parties or their privies. <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322, 327 n.5 (1979). Under Federal res judicata law, two suits involve the "same cause of action" if the claim asserted in the new suit "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." <u>Harnett v. Billman</u>, 800 F.2d 1308, 1313 (4th Cir. 1986). The same transaction or series of connected transactions "invokes a pragmatic standard to be applied with attention to the facts of the cases * * *. In general, the expression connotes a natural grouping or common nucleus of operative facts." 1 Restatement, Judgment 2d, sec. 24 cmt. b (1982).

Even though the District Court proceeding and the petition before this Court involve what appear on the surface to be two distinct causes of action (i.e., a petition to quash summonses and a petition for redetermination of deficiencies), petitioner's underlying claims--that the issuing of the Wells Fargo Bank summonses violated section 7602(c) and (d)--are the same and involve common nucleus of operative facts. Petitioner argued in the District Court that respondent failed to meet the notification requirement under section 7609(a)(1), an argument the District Court rejected as factually unfounded.[9] And his additional claim now

---

[9]Clearly, if respondent met the requirement under sec. 7609(a), he would also meet the requirement under sec. 7602(c)(1) that he provide reasonable advance notice to petitioner before making contacts with third parties.

**[\*14]** before this Court that respondent violated section 7602(d) by issuing the summonses when a criminal referral was pending is a claim that he could have made in the District Court proceeding because the claim arose from the same transaction and involves common facts (i.e., issuance of the administrative summonses to Wells Fargo Bank). Because the District Court's enforcement order was a final judgment on the merits, see United States v. Jose, 519 U.S. 54, 57 (1996) (per curiam) (finding District Court enforcement order is final and immediately appealable regardless of which side prevails in District Court); Church of Scientology of Cal. v. United States, 506 U.S. 9, 18 n.11 (1992) (finding a District Court order enforcing an IRS summons is an "appealable final order" and that "there is no general rule barring immediate appeal of IRS summons enforcement orders"), and since petitioner did not appeal that order to the Court of Appeals, the order became final and will foreclose petitioner's assertion in this Court of the same claims or other claims that he could have made in the District Court, see United States v. Edgerton, 734 F.2d 913, 920, 922 (2d Cir. 1984) (enforcement order is res judicata to contestant on his Fifth Amendment privilege claim and other claims not expressly dealt with in the order). Indeed, the District Court in a subsequent suit that petitioner brought against the United States claiming civil damages under section 7433 alleging violation of section 7602(c)(2)

**[\*15]** (notice to taxpayer when making third-party contacts) and section 301.7602-1(c), Proced. & Admin. Regs. (proscription on issuing of administrative summonses when a "Justice Department referral" is in effect) had already concluded that the District Court's determinations in the petition-to-quash proceedings would bar petitioner's civil damage claims on res judicata ground.  See Scharringhausen, 2010 WL 2735750, at \*4-\*6.  We see no reason why the same bar would not apply here.

Similarly, collateral estoppel precludes petitioner from relitigating the same issues that he litigated in the District Court.  The doctrine of collateral estoppel, or issue preclusion, "preclude[s] relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." United States v. Stauffer Chem. Co., 464 U.S. 165, 170-171 (1984).  Issue preclusion applies when "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  IRS v. Palmer (In re Palmer), 207 F.3d 566, 568 (9th Cir. 2000).

**[*16]** The District Court decided that respondent had met all the Powell requirements, one of which is that respondent follow all administrative steps the Code requires. The District Court explicitly found that respondent satisfied the notice requirement for making third-party contacts and concluded in its final enforcement order that respondent had timely notified petitioner, meeting the requirement under section 7609(a).[10]  Thus, the issue relating to prior notice was fully and actually litigated in the District Court, and petitioner may not relitigate that issue in this Court.

The District Court's finding that respondent had followed all administrative steps also means implicitly that respondent did not impermissibly issue the administrative summonses when "a Justice Department referral [was] in effect" in violation of section 7602(d) and its regulations. In a petition to quash IRS summonses, it is the Commissioner's burden to make a prima facie showing that he has satisfied the Powell requirements, and once the Commissioner has made that showing, it is incumbent on the taxpayer to disprove it. United States v. Blackman, 72 F.3d 1418, 1422 (9th Cir.1995). The District Court found respondent made the prima facie case that he had followed all administrative steps. Petitioner failed to rebut respondent's showing and did not appeal the enforcement

---

[10]See supra note 9.

**[*17]** order.  Hence, the District Court's finding necessarily decided that

respondent had complied with section 7602(d) <u>and</u> section 301.7602-1(c), Proced.

& Admin. Regs., which prohibit the issuance of administrative summonses when a

"Justice Department referral" is pending.  <u>See</u> <u>United States v. Rylander</u>, 460 U.S.

752, 760 (1983) (enforcement order necessarily contained implied finding that no

defense of lack of possession or control had been raised and sustained in

**[*18]** enforcement proceeding).[11]  Having failed to take his case to the Court of

Appeals,  petitioner may not relitigate the issue now in this Court.[12]

––––––––––

[11]In holding that res judicata and collateral estoppel foreclose petitioner's
claims that respondent violated sec. 7602(c) and (d), we distinguish our decision
today from our decision in Vallone v. Commissioner, 88 T.C. 794 (1987), in which
we held the taxpayers could not use res judicata and collateral estoppel offensively
to ask the Court to suppress evidence that the Commissioner sought to introduce.  In
the Vallone case, the District Court had quashed the Commissioner's administrative
summonses, finding that the Commissioner had obtained information to be used
against the taxpayers "through the concealment and misrepresentation of material
facts" and enforcing the summonses would constitute an abuse of judicial process.
Id. at 801.  Before the Tax Court, the taxpayers contended that the District Court's
decision would, under res judicata and collateral estoppel, bar the Commissioner
from introducing evidence obtained through the improperly issued summonses.  We
disagreed with the taxpayers and concluded that the District Court's final order to
quash the Commissioner's summonses had no preclusive effect because the question
before the District Court "[could not] be equated with the question of whether
evidence obtained by the government is admissible in a civil tax proceeding."  Id. at
804-805.  Then conversely, a finding by the District Court that the Commissioner
has issued administrative summonses valid under United States v. Powell, 379 U.S.
48 (1964), as is the case presently before us, necessarily means that any evidence
obtained from the summonses cannot be excluded in a deficiency proceeding on the
ground that the summonses are defective under Powell.  Further, the District Court
in the Vallone case "did not, as a part of its findings, actually and necessarily
determine that * * * [the Commissioner's] conduct rose to a level of a constitutional
violation requiring suppression."  Vallone v. Commissioner, 88 T.C. at 805.  But
here, to the extent petitioner is asking us to exclude evidence or to invalidate the
statutory notice of deficiency because respondent violated sec. 7602(c) and (d), our
considerations and the District Court's determinations are coextensive in scope.

[12]Lawyers appearing before us generally have the duty to advise the Court
of any relevant and controlling authorities even if they are directly adverse to the

(continued...)

**[\*19]** B.    <u>Summonses properly issued</u>

Even if petitioner's claims were not barred by claim preclusion or issue preclusion, the facts before us would still compel the conclusion that the issuance of the administrative summonses complied with section 7602(c) and (d).

First, respondent met the requirement under section 7602(c) to notify petitioner before making third-party contacts because Agent Phan sent notices in the form of Letter 3164 together with the initial contact letter to petitioner before she contacted any third party.  <u>See</u> Internal Revenue Manual (IRM) pt. 4.10.1.6.12.2 (May 14, 1999).

Second, respondent did not violate section 7602(d) because he never made "a Justice Department referral".  Under section 7602(d)(1), the Commissioner may not issue any administrative summonses or seek enforcement of summonses "if a Justice Department referral is in effect with respect to such [taxpayer]."  Such a

---

[12](...continued)
position being advocated.  <u>See</u> Model Rules of Prof'l Conduct R. 3.3.  Many of petitioner's arguments on brief were rejected several times by the District Court with citations of the relevant and controlling authorities.  Even though petitioner is not a member of a State bar and is appearing pro se, his prior experience litigating cases in the District Court and the Tax Court is well documented; and any claims that he does not know he has a duty to be candid to the Court would strain credulity.  Thus, his attempt to "hide the ball" by failing to direct the Court's attention to the relevant authorities is treading the fine line of making a misrepresentation to the Court.

**[\*20]** referral is in effect with respect to a taxpayer if the Commissioner recommends that the U.S. Attorney General commence a grand jury investigation or criminal prosecution of the taxpayer for tax-related offenses.[13] Sec. 7602(d)(2)(A)(i); sec. 301.7602-1(c)(2)(i), Proced. & Admin. Regs. The referral becomes effective at the time the Commissioner signs the document recommending criminal prosecution or grand jury investigation. Sec. 301.7602-1(c)(2), Proced. & Admin. Regs. Thus, "the relevant point after which a summons may not issue is when a recommendation for criminal prosecution is made to the Department of Justice." Kerr v. United States, 801 F.2d 1162, 1164 (9th Cir. 1986).

There is nothing in the record that shows respondent had made such a recommendation to the Department of Justice when he issued the administrative summonses. The only part of the record that even remotely suggests there was a criminal referral is Agent Phan's testimony that she referred the civil audit to the

---

[13]A "Justice Department referral" is also in effect when the Attorney General (or Deputy Attorney General or Assistant Attorney General) requests under sec. 6103(h)(3)(B) in writing that the Secretary disclose a return of, or return information relating to, a taxpayer for the purpose of a grand jury investigation of or potential or pending criminal investigation of the taxpayer for any alleged offense connected with the administration or enforcement of the internal revenue laws. Sec. 7602(d)(2)(A)(ii); sec. 301.7602-1(c)(2)(ii), Proced. & Admin. Regs. Petitioner did not allege the Attorney General had made such a request.

**[\*21]** CID in March 2004, almost a year and a half after respondent issued the summonses. Even had Agent Phan made the referral to the CID at the time respondent issued the summonses, that referral was not a "Justice Department referral" within the meaning of the statute. Indeed, Congress intended to draw a clear line to limit the Commissioner's power to issue administrative summonses as the criminal aspect of a tax investigation becomes clear.[14] Respondent did not cross that line in this case.

    C.    <u>Disguised criminal investigation</u>

Petitioner made one final argument on brief asking the Court to disregard the entire civil audit and find against respondent's deficiency notice because it was

---

[14]

    Many tax investigations by the Internal Revenue Service have both civil and criminal aspects. The \* \* \* [Senate Finance Committee] believes that a clear definition of when the power to issue an administrative summons exists and when it does not exist in cases with a criminal aspect will simplify administration of the laws without prejudicing the rights of taxpayers. To permit the drawing of a clear distinction, it was necessary to expand the purposes for which an administrative summons may be issued by the Internal Revenue Service.

S. Rept. No. 97-494, at 285 (1982), 1982 U.S.C.C.A.N. 781, 1031; <u>see also</u> Internal Revenue Manual pt. 5.17.6.11 (Sept. 20, 2000) (stating so-called sole criminal purpose defense has been rejected by Congress in sec. 7602(b) and only limitation is when Justice Department referral has been made under sec. 7602(d)).

**[*22]** based on a criminal investigation, which violated the law and respondent's internal guidelines.

The body of law that petitioner refers to in his brief concerns situations where the Commissioner has obtained evidence through a criminal investigation cloaked in a civil audit. Courts have held that evidence acquired through such "deceit, trickery or misrepresentation" would be excluded in the subsequent criminal prosecution against the taxpayer because such conduct would violate the taxpayer's constitutional rights under the Fourth and the Fifth Amendments to the Constitution. See United States v. Tweel, 550 F.2d 297 (5th Cir. 1977); see also United States v. Peters, 153 F.3d 445 (7th Cir. 1998); United States v. Robson, 477 F.2d 13 (9th Cir. 1973). But this is a civil tax case, and the cases petitioner cites are irrelevant.[15] See Weiss v. Commissioner, 919 F.2d 115, 118-119 (9th Cir. 1990), aff'g T.C. Memo. 1988-586.

Petitioner does not specifically point out in his brief the internal guidelines that respondent had allegedly failed to follow. In very general language, petitioner

---

[15]In certain situations the exclusionary rule would apply in a civil tax deficiency proceeding on due process grounds under the Fifth Amendment if the constitutional infirmity in the Commissioner's conduct were so outrageous as to shock the Court's conscience. See Vallone v. United States, 88 T.C. at 813. Petitioner has not raised this argument, and the record does not show respondent had committed any error so grave as to require us under the Constitution to set aside the notice of deficiency.

**[*23]** states: "IRS guidelines specifically warn the revenue agents who are in the process of determining the appropriateness of a criminal referral must not obtain evidence and/or direction from the Criminal Investigation Division for a specific case that is under examination." The part of the IRM that appears to relate to petitioner's contention states: "If after consultation with the district fraud coordinator (DFC), it is determined a potential fraud case has firm indicators of fraud and meets criminal criteria, the compliance employee will suspend all activities without disclosing to the taxpayer or representative the reason for the suspension." IRM pt. 104.2.3.4 (May 19, 1999).

Even if, for the sake of argument, a criminal referral was pending and respondent did not follow his internal procedures to suspend the civil audit, such procedures were not required by either the Constitution or statute, and noncompliance is not fatal to respondent's determinations in the notice of deficiency. See United States v. Caceres, 440 U.S. 741, 743-744, 749-750 (1979). As petitioner correctly points out in his brief, the Commissioner issued these internal guidelines in the light of Tweel to prevent evidence that the Government may use in a future criminal prosecution from being excluded by a court's later finding that the Government had acquired the evidence from the taxpayer in violation of the taxpayer's constitutional rights. But there is more than one way

**[\*24]** for the Commissioner to adhere to the constitutional standard announced in

Tweel and to protect the criminal prospect of its fraud investigation. See Tweel,

550 F.2d at 299 ("'[T]he record * * * must disclose some affirmative

misrepresentation to establish the existence of fraud'" (quoting United States v.

Prudden, 424 F.2d 1021, 1033 (5th Cir. 1970))). Thus, because the purpose of

these procedures is only to safeguard the Government's interest in pursuing a

criminal prosecution in fraud cases and to govern the Commissioner's internal

affairs, they do not have the effect or the force of law and are "merely directory and

not mandatory and non-compliance does not render the action of the respondent

invalid." Vallone v. Commissioner, 88 T.C. at 807-808; see Weiss v.

Commissioner, 919 F.2d at 118-119; Jones v. Commissioner, 97 T.C. 7, 24-25

(1991); see also Riland v. Commissioner, 79 T.C. 185, 201-202 (1982).

It is a well-settled principle that the Court will not look behind a statutory

notice of deficiency "to examine the evidence used, the propriety of the

Commissioner's motive, or the administrative policy or procedure in making his

determinations." Vallone v. Commissioner, 88 T.C. at 806; Greenberg's Express,

Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Like the taxpayer in Vallone,

petitioner is attempting to circumvent this bedrock principle by challenging

the admissibility of evidence that is the core of respondent's deficiency

**[*25]** determinations.  See generally Greenberg's Express, Inc. v. Commissioner, 62

T.C. at 328 (Court would look behind deficiency notice if "there is substantial

evidence of unconstitutional conduct on respondent's part").  Having rejected

petitioner's arguments above, we will now turn to respondent's determinations.

II.     Respondent's determinations in the statutory notice of deficiency

        A.     Unreported income

Gross income includes all income from whatever source derived, unless

otherwise specifically excluded.  Sec. 61(a).  The definition of gross income broadly

includes any instance of undeniable accessions to wealth, clearly realized, and over

which the taxpayer has complete dominion and control.  Commissioner v. Glenshaw

Glass Co., 348 U.S. 426, 431 (1955); see also Le v. Commissioner, T.C. Memo.

2003-219, 86 T.C.M. (CCH) 116, 121 (2003) ("Absent a provision to the contrary,

funds which a shareholder diverts from a corporation are generally includable in the

shareholder's gross income").

The Commissioner's determinations in a notice of deficiency are generally

presumed correct, and the taxpayer bears the burden of proving that those

determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

(1933).  In the Court of Appeals for the Ninth Circuit, to which the case is

appealable, the presumption arises only if it is supported by a minimal evidentiary

**[\*26]** foundation.  Weimerskirch v. Commissioner, 596 F.2d 358, 360-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).  In the context of unreported income, the Commissioner must produce "some substantive evidence * * * demonstrating that the taxpayer received unreported income."  Delaney v. Commissioner, 743 F.2d 670, 671 (9th Cir. 1984), aff'g T.C. Memo. 1982-666.  Once the Commissioner meets his burden of production, "the taxpayer must establish by a preponderance of the evidence that the determination is arbitrary or erroneous."  Id.; see also United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983).

Because petitioner argues on brief only that respondent had improper motives and allegedly violated the law in issuing the administrative summonses and in conducting the civil audit, we will treat petitioner's silence on the  remaining issues as a concession of those issues.  See Calcutt v. Commissioner, 84 T.C. 716, 721-722 (1985).  Accordingly, because the record supports respondent's determination that petitioner diverted funds from the four businesses that he owned by making check withdrawals from which he derived personal benefit, we sustain respondent's determinations of petitioner's unreported income for the years at issue.

**[\*27]**      1.     <u>Foundation for presumption of correctness of respondent's income determinations</u>

When a taxpayer has provided little information in an audit, as is the case here, the Commissioner may reconstruct the taxpayer's income using any available method including examining the taxpayer's bank records. <u>See generally</u> <u>Holland v. United States</u>, 348 U.S. 121, 132-133 (1954); <u>United States v. Baum</u>, 435 F.2d 1197, 1201 (7th Cir. 1971). The record shows that petitioner owned R Michael Construction, Pacific Sun, Torrey Beach, and 4181 Mississippi, that they were income-producing business activities in which petitioner engaged during the relevant period, and that over $3.5 million was deposited in their bank accounts over the years at issue. Respondent has produced numerous bank records and copies of canceled checks showing that petitioner had sole control over the bank accounts and wrote checks to himself and to other individuals drawn on the entities' bank accounts. These check withdrawals do not reveal any clear business purposes or any ties to the business entities.

Indeed, in several instances the record reveals the personal nature of these withdrawals. In one of these instances, petitioner had written several checks to Heidi Humphreys who, according to Mr. Fike's testimony, was petitioner's "part-

**[*28]** time girlfriend."[16] Petitioner had also written checks to San Diego Travel and Havasu Springs Resort which respondent determined to be for petitioner's personal benefit. In addition to the checks he wrote to purchase cashier's checks to pay off his Cayman National Bank credit card account, petitioner wrote numerous checks separately to Brad Dingham, Dawn Landrum, Dan Sanders, Heather Winger, and petitioner's son Michael Scharringhausen, which all appear to be personal.

Viewing the record as a whole, the Court concludes that respondent has established the minimum evidentiary foundation to show that the check withdrawals were not business expenses deductible by the four business entities, but they were rather made for petitioner's personal gain and thus are income to petitioner.[17]

---

[16]Mr. Fike also testified that Ms. Humphreys was also working for petitioner and Mr. Fike under another entity called Stimulife, Inc.

[17]Under the constructive dividend theory, which respondent argues as an alternative theory for finding the unreported income, expenses nondeductible to a corporation are income to the corporation's shareholder if they "also represent some economic gain or benefit to the owner-taxpayer." Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977), remanding T.C. Memo. 1973-223. Our finding that the check withdrawals were made for petitioner's benefit applies equally under the constructive dividend theory. Because respondent has met his burden to give rise to the presumption of correctness of his income determinations, it is upon petitioner to produce evidence

(continued...)

**[\*29]**     2.     <u>Petitioner's rebuttal of the presumption</u>

For his part, petitioner called Mr. Fike at trial to challenge respondent's determination of petitioner's unreported income.  Petitioner also called Agent Phan and Mr. List to testify regarding respondent's computation of petitioner's income and respondent's motives behind the civil audit.  Petitioner himself did not testify.

On brief, petitioner argues only that respondent violated the law and his internal procedures when he issued the administrative summonses and conducted the civil audit, arguments we have already rejected as unfounded.  To the extent petitioner also claims that respondent's determinations were otherwise arbitrary and capricious because the audit was part of the Government's vendetta against him in connection with its prior criminal prosecution in the District Court for fraud and money laundering, we also reject that argument because, as it is worth emphasizing again, the Court will not look behind the statutory notice to question "the propriety of * * * [respondent's] motive" unless petitioner is able to show by

---

[17](...continued)
that the corporations he owned lacked sufficient earnings and profits for the "distributions" to be characterized as taxable dividends as opposed to nontaxable return of capital.  <u>See</u> <u>Boulware v. United States</u>, 552 U.S. 421, 438 n.14 (2008) (suggesting taxpayer bears the burden of producing some evidence to show corporation lacked sufficient earnings and profits and taxpayer had sufficient basis in his stock).  Petitioner has failed to produce any such evidence.

[*30] substantial evidence that respondent's conduct gravely offends the Constitution. Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328. Petitioner has not made such a showing. Moreover, respondent selected petitioner for audit because petitioner appeared on a list of potential tax evaders that respondent had compiled as a result of the John Doe summonses and also because petitioner did not file his Federal income tax returns for the years at issue. Thus, we cannot say respondent selected petitioner for audit for "a clearly unjustifiable criterion" that would justify relief. See id.

In any event, petitioner's presentation at trial alone did not succeed in rebutting the presumption of the correctness of the notice of deficiency by a preponderance of the evidence. The only relevant testimony was from Mr. Fike, who testified that he received a number of checks from petitioner that were drawn on some of the bank accounts at issue, that he kept the money, and that the amounts deposited were of no benefit to petitioner. Mr. Fike also testified as to the checks that petitioner wrote to the other individuals and entities and attempted to explain how they did not personally benefit petitioner, even though Mr. Fike admitted that he had no personal knowledge of the specific circumstances surrounding the writing of those checks. On cross-examination, Mr. Fike stated that he was not aware of any Forms 1099-MISC, Miscellaneous Income, or Forms

[*31] W-2, Wage and Tax Statement, issued to these individuals and admitted he did not have much personal knowledge of the financial affairs and accounting of the four business entities involved and that these were all "Mr. Scharringhausen's department." He could not even recall the nature of some of the checks that he received from petitioner. Thus, as the trier of fact, we are unable to rely on Mr. Fike's wavering testimony, which was ambiguous at times and self-contradicting as a whole, especially given his admission that petitioner was the only person in charge of the finances of the four business entities involved.

In sum, petitioner has failed to show by a preponderance of the evidence that respondent's determinations in the statutory notice are incorrect.

B.    NOL

Deductions are a matter of legislative grace, and a taxpayer bears the burden of producing sufficient evidence to substantiate any allowable deduction under the Code. Sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Section 172 allows a taxpayer to deduct an NOL for a taxable year in an amount equal to the sum of the NOL carryovers plus NOL carrybacks to that year. Sec. 172(a). Unless an election is made, an NOL for any taxable year must first be carried back 2 years and then carried over 20 years. Sec. 172(b)(1)(A). A taxpayer claiming an NOL deduction

**[*32]** bears the burden of establishing both the existence of the NOL and the amount of any NOL that may be carried over to the subject years. Rule 142(a)(1); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955); Green v. Commissioner, T.C. Memo. 2003-244, 86 T.C.M. (CCH) 273, 274-275 (2003). As part of meeting that burden, the taxpayer must file with his return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs.

Because petitioner's brief does not discuss whether he is entitled to the NOL deductions for the years at issue, we consider petitioner to have waived the argument. See Zapara v. Commissioner, 124 T.C. 223, 233 (2005), aff'd, 652 F.3d 1042 (9th Cir. 2011). In any event, petitioner has not met his burden to show that he is entitled to any of the NOL deductions. As a result of the Court's finding today that petitioner had unreported income for years 1999 through 2001, we conclude that petitioner did not incur any net operating loss in 1999 or 2000 to carry over to 2001. Petitioner's 1998 Federal income tax return in evidence shows he reported an NOL of $53,457 for that year, all of which was claimed as a Schedule C business loss. However, petitioner failed to submit the Schedule C into evidence to provide details of any business income or any business expenses

**[\*33]** that he purportedly claimed. Moreover, petitioner has also failed to show whether he had income in any of the carryback years that used the NOL from 1998. Without more, we decline to find that petitioner in fact incurred deductible losses in 1998 or that even if he did incur an NOL in 1998, he could carry it to any of the tax years at issue. Accordingly, we sustain respondent's disallowance of the NOL deductions petitioner claimed.

C.     Section 6651(a)(1) addition to tax

Section 6651(a)(1) imposes an addition to tax on a taxpayer for failure to timely file a Federal income tax return unless the taxpayer can show that such failure was due to reasonable cause and not willful neglect. It is undisputed that petitioner did not timely file his tax returns. At trial or on brief, petitioner neither advanced any arguments nor articulated any reasons as to why his failure to timely file his income tax returns was due to reasonable cause and not a result of his willful neglect. Thus, the Court finds that he has conceded the issue and is liable for the addition to tax for each year at issue. See Zapara v. Commissioner, 124 T.C. at 233; see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

D.     Section 6663 fraud penalty

Section 6663(a) imposes a 75% penalty on the portion of any underpayment of tax attributable to fraud. Section 6663(b) provides that where the

[*34] Commissioner establishes that any portion of an underpayment of tax is attributable to fraud, the entire underpayment is treated as attributable to fraud except with respect to the portion of the underpayment that the taxpayer establishes, by a preponderance of the evidence, is not attributable to fraud.

The Commissioner bears the initial burden of establishing fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Clear and convincing evidence is:

> "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 516 (1990) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)); see also Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1105 (9th Cir. 1992) ("Clear and convincing evidence means evidence sufficient to support a finding of 'high probability.'") (citing Mock v. Mich. Millers Mut. Ins. Co., 5 Cal. Rptr. 2d 594, 610 (Ct. App. 1992)). To carry his burden, the Commissioner must prove for each year in which fraud is alleged that (1) an underpayment of tax existed, and (2) a portion of the underpayment was attributable to fraud. Petzoldt v. Commissioner, 92 T.C. 661, 698 (1989).

[*35] Because we conclude respondent has met his burden with clear and convincing evidence and petitioner has failed to rebut it by a preponderance of the evidence, we sustain respondent's determination to impose the fraud penalty.

### 1. Underpayment of tax

The Commissioner may satisfy his burden of proving an underpayment of tax attributable to unreported income by either (1) proving a likely source of the unreported income, or (2) disproving any alleged nontaxable source of that income. DiLeo v. Commissioner, 96 T.C. 858, 873-874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). To prove an underpayment, the Commissioner need not prove the precise amount of the deficiency he has determined; he need only prove clearly and convincingly that there is a deficiency and "at least some part of the deficiency was due to fraud." Clark v. Commissioner, 266 F.2d 698, 717 (9th Cir. 1959), remanding T.C. Memo. 1957-129; see also Downing v. Commissioner, T.C. Memo. 2003-347, 86 T.C.M. (CCH) 738, 750 (2003); Moore v. Commissioner, T.C. Memo. 2001-77, 81 T.C.M. (CCH) 1442, 1446 (2001). The presumption of correctness attached to the Commissioner's deficiency determination does not extend to his fraud determination. Clark v. Commissioner, 266 F.2d at 717.

**[\*36]** As we have stated elsewhere in this opinion, the record shows that petitioner had written many checks drawn on the bank accounts held by his business entities. More specifically, of all the check withdrawals totaling more than $560,000, petitioner wrote checks to himself and checks payable to cash (or to Wells Fargo Bank to purchase cashier's checks) for more than $220,000--a fact that petitioner has not disputed by even a scintilla of evidence--which clearly represents pecuniary gain and thus income to petitioner. Our finding is further bolstered by our finding that the four business entities petitioner owned were shell companies whose corporate form should be disregarded and whose assets should be imputed to petitioner. Thus, respondent has met his burden to prove by clear and convincing evidence the first element for imposing the fraud penalty, as the record clearly shows that for each of the years at issue petitioner had unreported income resulting in underpayment of tax.

2. Fraudulent intent

Whether a portion of the underpayment of tax is attributable to fraud is a question of fact to be resolved on the basis of the record as a whole. Parks v. Commissioner, 94 T.C. 654, 660 (1990); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). Fraud is defined as the intentional commission of an act or acts for the specific

[*37] purpose of evading tax believed to be owing. Petzoldt v. Commissioner, 92 T.C. at 698. Fraudulent intent is never imputed or presumed but must always be established by independent evidence. Id. at 699. Because fraud is rarely admitted and the taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences drawn from the facts. Spies v. United States, 317 U.S. 492 (1943); Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies, 317 U.S. at 499.

There are several nonexclusive "badges of fraud" from which the Court may infer a taxpayer's fraudulent intent: (1) understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) giving implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal illegal activities, and (9) dealing extensively in cash. See Bradford v. Commissioner, 796 F.2d at 307-308; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Bussell v. Commissioner, T.C. Memo. 2005-77, 89 T.C.M. (CCH) 1032, 1038-1039 (2005), aff'd, 262 Fed. Appx. 770 (9th Cir. 2007). A taxpayer's education as well as business background and sophistication are also relevant to our inquiry. Niedringhaus v. Commissioner, 99 T.C. at 211.

**[\*38]** After thoroughly examining the record, we found present in this case all but one indicium of fraud that the Court of Appeals stated in <u>Bradford</u>. Accordingly, we conclude respondent has proven by clear and convincing evidence that petitioner had the requisite fraudulent intent.

Before respondent opened an audit relating to petitioner's 1999 through 2001 tax years, petitioner failed to file Federal income tax returns for those years. The same is true with his various business entities. And when he finally did file the returns after respondent commenced the audit, petitioner repeatedly underreported his income and reported substantial losses. Time and time again throughout his audit, petitioner steadfastly refused to cooperate with respondent. He also made groundless arguments in the District Court's petition-to-quash proceedings to obstruct respondent's efforts to obtain information from third parties about his financial and business affairs. Hoping that one hand of the Federal judiciary does not know what the other hand is doing, petitioner is now making the same meritless arguments why the administrative summonses respondent had issued were invalid, arguments which the District Court had already rejected in those proceedings. Given petitioner's rich experience litigating cases in Federal courts and the fact that he is also an intelligent and sophisticated businessman, we will infer with conviction from petitioner's evasive and litigious

[*39] behavior that he intended to conceal and obscure the true nature of his financial dealings in the years at issue.

The evidence has also convinced us that petitioner's various entities were part of an elaborate scheme to conceal his income and expenses. It is undisputed that petitioner owned these business entities, which had not filed any Federal income tax returns. These entities held multiple bank accounts in their names over which petitioner--who had no bank accounts under his name--had the sole signatory authority. Petitioner offered no explanation as to how he supported himself financially, whereas the record provides us a clear picture of how petitioner regularly withdrew money from the bank accounts to pay his personal expenses. He repeatedly withdrew large sums of cash, some of which he used to purchase cashier's checks to pay off the Cayman National Bank credit card account that he used to conduct personal transactions. Further, petitioner has not come forward with any detail or any accounting to show the daily operations, the business structures, or the financial affairs of his business entities. He did not testify at trial but instead presented his case with misleading arguments and innuendos. These facts together with petitioner's evasive behavior and failure to maintain adequate records for his businesses allow a strong inference that these businesses are a sham to hide income.

**[*40]** In addition, petitioner's involvement in prior illegal, fraudulent activities also weighs against him in our analysis. He was previously charged with five counts of mail fraud, two counts of money laundering, and four counts of bankruptcy fraud. Ultimately, a jury convicted him of three counts of bankruptcy fraud for hiding assets from the bankruptcy court. This is highly probative because respondent determined petitioner committed tax fraud by concealing his income and assets from respondent.

The absence of the fourth Bradford factor--namely, giving implausible or inconsistent explanations of behavior--is not surprising and does not affect our analysis. Through his experience in navigating the Federal judicial system, petitioner has familiarized himself with legal proceedings and can appreciate the positive as well as the adverse consequences of testifying, which we believe explains why he has chosen not to testify at trial and subject himself to examination by respondent's counsel. Petitioner did not give implausible or inconsistent explanations of his behavior because petitioner did not give any explanations at all. Moreover, we will draw a negative inference from petitioner's failure to testify and to present evidence when respondent's probative evidence against petitioner is so overwhelming. See Baxter v. Palmigiano, 425 U.S. 308,

**[*41]** 318-319 (1976); Petzoldt v. Commissioner, 92 T.C. at 685 (drawing adverse inference from failure to testify permitted in civil case).

In the light of the foregoing discussion, we are convinced that petitioner's underreporting of income for the years at issue resulted in underpayments of tax. We are also convinced that at least a portion of each underpayment was attributable to fraud. Because petitioner has not provided any evidence that any portion of any underpayment was not attributable to fraud, we find the entire amount of each underpayment of tax was attributable to fraud and sustain respondent's determinations of the fraud penalties.

III.    Epilogue

In reaching our holdings, we have considered all arguments raised by the parties. To the extent not discussed herein, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.